**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

———————————

No. 20-3671

———————————

**UNITED STATES OF AMERICA,**

Appellant,

v.

**KENNETH SCOTT McKEE,**
**CHARLES V. BALTZELL,**
and
**CURTIS P. LANHAM,**

Appellees.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, SOUTHWESTERN DIVISION
HONORABLE M. DOUGLAS HARPOOL, DISTRICT JUDGE

———————————

**REPLY BRIEF FOR THE UNITED STATES**

———————————

TERESA A. MOORE
  Acting United States Attorney

BRIAN P. CASEY
CASEY CLARK
  Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, 5th Floor
Kansas City, Missouri  64106
Telephone:  (816) 426-3122

*Attorneys for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ......................................................... ii

ARGUMENT ................................................................................1

A.   Both Charged Statutes are Constitutional Exercises of Congress's Commerce Power That are Fully Defined by Their Elements. .........................................................................................5

    1.   What power Congress thought it used to pass the charged statutes is irrelevant to whether it had the legislative power to enact each crime...................................................................5

    2.   The statutory history reinforces the text and shows that both statutes are of general application and reach all conduct defined by their terms.................................................10

    3.   Both statutes are limited by their express terms to conduct Congress can regulate through its commerce power. ...............16

    4.   Reversing the motion to dismiss because the indictment adequately charges each crime would not constitute a constructive amendment of the charges. ...................................21

B.   Table Rock Lake is Currently Susceptible to Interstate Shipping and, Therefore, Within the Admiralty Jurisdiction of the Federal Courts................................................................................................23

    1.   Because admiralty jurisdiction requires present navigability, the *Edwards v. Hurtel* cases must be limited to their facts, which were not in the record here.......................23

    2.   No binding authority holds that admiralty jurisdiction requires current, non-recreational shipping across a body of water....................................................................................25

Appellate Case: 20-3671     Page: 2     Date Filed: 06/29/2021 Entry ID: 5050315

CONCLUSION...............................................................................30

CERTIFICATE OF COMPLIANCE...........................................................31

CERTIFICATE OF SERVICE ................................................................32

Appellate Case: 20-3671    Page: 3    Date Filed: 06/29/2021 Entry ID: 5050315

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975)............... 27, 28

*Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*,
    709 F.3d 1055 (11th Cir. 2013).............................................29

*Butler v. Boston & S.S.S. Co.*, 130 U.S. 527 (1889).....................................11

*Chapman v. United States*, 575 F.2d 147 (7th Cir. 1978) ..................... 27, 28

*The Daniel Ball*, 77 U.S. 557 (1870)........................................... 4, 11, 25, 29

*Edwards v. Hurtel*, 717 F.2d 1204 (8th Cir. 1983).......................... 23, 24, 29

*Edwards v. Hurtel*, 724 F.2d 689 (8th Cir. 1984)........................................24

*Ex Parte Garrett*, 141 U.S. 1 (1891) ........................................................11

*Finneseth v. Carter*, 712 F.2d 1041 (6th Cir. 1983)....................................29

*Ford v. United States*, 273 U. S. 593 (1927) ..................................................22

*Freytag v. Comm'r*, 501 U.S. 868 (1991).......................................................20

*The Genesee Chief*, 53 U.S. 443 (1851) ................................................. 11, 12

*Gonzalez v. Raich*, 545 U.S. 1 (2005) ........................................................6, 14

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989)....................................21

*In re Strahle*, 250 F.Supp.2d 997 (N.D. Ind. 2003)......................................28

*INS v. St. Cyr*, 533 U.S. 289 (2001)..............................................................19

*Jennings v. Rodriguez*, 583 U.S. —, 138 S.Ct. 830 (2018)...........................19

Appellate Case: 20-3671    Page: 4    Date Filed: 06/29/2021 Entry ID: 5050315

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) .............................. 11, 17

*Land & Lake Tours, Inc. v. Lewis*, 738 F.2d 961 (8th Cir. 1984) ................17

*Livingston v. United States*, 627 F.2d 165 (8th Cir. 1980)........... 4, 25, 26, 28

*Lockheed Martin Corp., ACE USA v. Morganti*, 412 F.3d 407
    (2d Cir. 2005) ....................................................... 26, 27, 29

*Mathis v. United States*, 579 U.S., —, 136 S.Ct. 2243 (2016).......................1

*The Montello*, 87 U.S. 430 (1874) .................................................................25

*Moore v. American Transp. Co.*, 65 U.S. (24 How.) 1 (1860)......................11

*Mullenix v. United States*, 984 F.2d 101 (4th Cir. 1993)...............................29

*Musacchio v. United States*, 577 U.S. 237 (2016).........................................23

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .....................5, 6

*Providence & N.Y. S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578 (1883) ..............11

*The Robert W. Parsons*, 191 U.S. 17 (1903) .................................................11

*Skilling v. United States*, 561 U.S. 358 (2010) ..............................................19

*Taylor v. United States*, 495 U.S. 575 (1990)..................................................1

*Terry v. United States*, 593 U.S., —, 2021 WL 2405145 n.4
    (June 14, 2021) ...................................................................................22

*Three Buoys*, 921 F.2d 775 (8th Cir. 1990) ........................................... 27, 29

*United States v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir. 1979)............13

*United States v. Anderson*, 846 Fed.Appx. 429 (8th Cir. 2021)......................1

*United States v. Appalachian Elec. Power Co.*, 311 U.S. 377 (1940)
    ............................................................................................ 23, 24, 26

Appellate Case: 20-3671    Page: 5    Date Filed: 06/29/2021 Entry ID: 5050315

*United States v. Bramer*, 832 F.3d 908 (8th Cir. 2016)................................16

*United States v. Flores*, 289 U.S. 137 (1933)...................................................9

*United States v. Inman*, 558 F.3d 742 (8th Cir. 2009)....................................23

*United States v. Kaluza*, 780 F.3d 647 (5th Cir. 2015) ................................18

*United States v. LaBrecque*, 419 F.Supp. 430 (D.N.J. 1976)........................18

*United States v. Lopez*, 514 U.S. 549 (1995)...................................................7

*United States v. McIntosh*, 23 F.3d 1454 (8th Cir. 1994)..............................22

*United States v. Palomar-Santiago*, 593 U.S. —, 141 S.Ct. 1615 (2021) ......2

*United States v. Park*, 938 F.3d 354 (D.C. Cir. 2019)....................................6

*United States v. Turner*, 842 F.3d 602 (8th Cir. 2016)..................................16

*United States v. Warner*, 28 F. Cas. 404 (C.C.D. Ohio 1848)........................11

*United States v. Whirlwind Soldier*, 499 F.3d 862 (8th Cir. 2007) ...............21

*Van Buren v. United States*, 593 U.S., —, 2021 WL 2229206
(June 3, 2021) .......................................................................................1

*Wickard v. Filburn*, 317 U.S. 111 (1942).......................................................14

*Wisconsin Cent. Ltd. v. United States*, 585 U.S., —, 138 S.Ct. 2067
(2018)....................................................................................................15

*Woods v. Cloyd W. Miller Co.*, 333 U.S. 138 (1948) ......................................5

## **Statutes**

5 Stat. 304 ............................................................................................... 10, 13

16 U.S.C. § 460d...............................................................................................20

Appellate Case: 20-3671     Page: 6     Date Filed: 06/29/2021 Entry ID: 5050315

18 U.S.C. § 32 ............................................................................8

18 U.S.C. § 1115 .....................................................................1, 21

18 U.S.C. § 3231 ......................................................................1, 7

18 U.S.C. § 3401 .........................................................................20

46 U.S.C. § 2302(b) ......................................................................1

46 U.S.C. § 3201 .........................................................................20

46 U.S.C. § 30101 .......................................................................16

46 U.S.C. § 30701 .......................................................................15

46 U.S.C. § 30702 .......................................................................16

46 U.S.C. § 30705 .......................................................................16

46 U.S.C. § 30706 .......................................................................16

46 U.S.C. § 30707 .......................................................................16

## **Regulations**

36 C.F.R. § 327.25 .......................................................................20

## **Other Authorities**

H.R. Rep. No. 80-304, at A91 (1947) ..........................................15

Appellate Case: 20-3671    Page: 7    Date Filed: 06/29/2021 Entry ID: 5050315

## <u>ARGUMENT</u>

As the Supreme Court recently reiterated, when determining the scope of a federal crime, "we start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. —, 2021 WL 2229206, at *5 (June 3, 2021). The scope, or prescriptive reach, of each crime charged in this case is defined by its elements, which in turn are derived from the plain language of statute that creates it. *See, e.g.*, *Mathis v. United States*, 579 U.S. —, 136 S.Ct. 2243, 2248-49 (2016) (explaining how statutes define the elements of crimes); *Taylor v. United States*, 495 U.S. 575, 600 (1990) (holding elements of prior offenses are determined by looking "only to the statutory definitions"). The second superseding indictment in this case alleges each statutorily defined element for each statute for each count. Having jurisdiction over the case under 18 U.S.C. § 3231, the district court's consideration of Appellees' motion to dismiss should have ended there, and the motion should have been denied. *See, e.g.*, *United States v. Anderson*, 846 Fed.Appx. 429, 429-30 (8th Cir. 2021) (unpublished).

Tellingly, neither statute contains the work "navigable," and neither refers to, let alone requires, the admiralty jurisdiction of the courts. *See* 18 U.S.C. § 1115; 46 U.S.C. § 2302(b). By their plain terms, both are statutes of general application, and nothing in the text, structure, or statutory history

-1-

of either suggests any limitations beyond those plain terms. *See, e.g.*, *United States v. Palomar-Santiago*, 593 U.S. —, 141 S.Ct. 1615, 1620-21 (2021) (reversing because Ninth Circuit created an exception that "is incompatible with the text of" the statute). Appellees' challenge to the indictment began, and apparently remains, as one to the district court's subject-matter jurisdiction. (DCD 54 (Defendants' Joint Motion to Dismiss Second Superseding Indictment for Lack of Admiralty Jurisdiction); Appellees Brf. 2 ("The district court lacked general admiralty jurisdiction for the reasons stated herein.").) Their challenge later evolved to focus on the scope of the charged statutes. (DCD 77 at 4; DCD 100 at 10-13.) Their challenge, however, never claimed that the indictment was defective for not alleging the statutory elements.

Instead, both the district court and Appellees ignore the clear text of both statutes and attach onto each, like a barnacle, an extra-textual requirement that would require the otherwise generally applicable crimes to occur within the admiralty jurisdiction of the district court. (*See* Government's Adden. A11-A14, A18; Appellees Brf. 15-18.) Although neither statute imposes that geographical requirement, the district court dismissed the charges in this case for exactly that reason, and Appellees defend that dismissal, albeit on arguably different grounds, in their brief.

Appellate Case: 20-3671     Page: 9     Date Filed: 06/29/2021 Entry ID: 5050315

To reach the conclusion that the district court correctly dismissed the indictment because it lacked admiralty jurisdiction over Table Rock Lake, Appellees' argument requires the truth of two carefully tailored propositions: (1) that in passing both charged statutes, Congress understood itself to be acting under its implied admiralty power, which created an extra-textual limitation requiring those statutes to only apply where federal courts have admiralty jurisdiction (Appellees Brf. 18-34); and (2) that Table Rock Lake is not currently under the admiralty jurisdiction of federal courts because the Lake does not currently sustain sufficient commercial shipping (Appellees Brf. 45-55). Both of those propositions are false.

First, Appellees' claim that the power Congress acted under determines the scope of a statute's reach contradicts established Supreme Court precedent. Appellees do not provide a single case to support the claim, and the Government is not aware of any case that would. Rather, Appellees confuse Congress's legislative power to enact a statute with the conduct that a particular statute criminalizes; the two are not the same. Courts look to any power, whether separately or in conjunction, when deciding whether a statute was within Congress's legislative jurisdiction and in doing so are not limited to Congress's own understanding of its actions. In contrast, courts look to the text of a statute when determining its scope, and the Government is not aware

-3-

of any case that reads into a statue a specific geographic requirement that is not included in the statute's text. Appellees' arguments fatally depend upon requirements that do not exist.

Second, Appellees contradict Supreme Court precedent again in claiming that "[t]o establish susceptibility of use as a highway of commerce, a water *must be currently used or likely to be used for commercial shipping* in the future." (Appellees Brf. 51 (emphasis added).) Rather, binding precedent holds that a body of water falls within the courts' admiralty jurisdiction if it is used or is "susceptible of being used" for "trade and travel on water." *The Daniel Ball*, 77 U.S. 557, 563 (1870); *see also Livingston v. United States*, 627 F.2d 165 (8th Cir. 1980). While Appellees would like this Court to focus on whether "commercial shipping," which they do not define, currently traverses the Lake, this Court should instead follow precedent in both focusing on the physical attributes of the Lake and on all of the commercial activity on the Lake, including recreational travel and tours conducted for profit. These considerations demonstrate that Lake falls within the admiralty jurisdiction of federal courts.

Make no mistake, the Government asserts both that the charged statutes are not limited in scope to conduct that occurs within the admiralty jurisdiction of federal courts and that Table Rock Lake is within the admiralty jurisdiction

Appellate Case: 20-3671     Page: 11     Date Filed: 06/29/2021 Entry ID: 5050315

of the federal courts. There are no "post-hoc efforts" (Appellees' Brief 7, 11), as the Government raised all of its positions below. (DCD 65 at 30-42; DCD 98). How the Government presents its arguments does not designate one as a "back up" to another. (Appellees Brf. 9.) Rather, the Government's arguments move from the general to the specific, showing where the district court erred at each step of the way.

### A. _Both Charged Statutes are Constitutional Exercises of Congress's Commerce Power That are Fully Defined by Their Elements._

1. _What power Congress thought it used to pass the charged statutes is irrelevant to whether it had the legislative power to enact each crime._

Appellees' primary assertion—that the scope of the statutes charged in this case is determined by the power Congress used to enact them (_see_ Appellees Brf. 9, 18-19, 36-41)—is wrong as a matter of law.

"[T]he 'question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'" _Nat'l Fed'n of Indep. Bus. v. Sebelius_, 567 U.S. 519, 570 (2012) (quoting _Woods v. Cloyd W. Miller Co._, 333 U.S. 138, 144 (1948)). Where, unlike here, the constitutional authority for Congress to enact a statute is in question, "[a] court must be able to discern a basis for Congress's exercise of an enumerated power, but that does not mean that a law must be struck down because Congress used the wrong labels or failed to identify the source of its

Appellate Case: 20-3671     Page: 12     Date Filed: 06/29/2021 Entry ID: 5050315

power." *United States v. Park*, 938 F.3d 354, 363 (D.C. Cir. 2019) (quotations omitted). That is particularly true because "Congress's power to legislate may also stem from more than one enumerated power." *Id.* (collecting cases).

Nor, as Appellees suggest, is Congress required to make specific findings to enact a statute under the Commerce Clause. (*See* Appellees Brf. 39-40). The very case Appellees use to support that suggestion, *Gonzalez v. Raich*, instead holds that where no heightened legal scrutiny applies, as it would for a claim based on free speech, the Supreme Court "has never required Congress to make particularized findings in order to legislate." 545 U.S. 1, 21 (2005). While such findings can be helpful "when the connection to commerce is not self-evident," *id.*, here that connection is obvious under the plain terms of § 1115.

In short, the question of whether Congress had the power to legislate does not depend on what power Congress thought it was using when it legislated. *See NFIB*, 567 U.S. at 564-74 (holding provision of the Affordable Care Act constitutional under Congress's power to tax although Congress did not use that "label"). Despite basing their entire argument that the charged statutes can only apply to admiralty waters on the premise that Congress purposefully, though silently, used its implied admiralty power to enact them (*see, e.g.*, Appellees Brf. 37 ("But the relevant question is whether Congress

-6-

did so.")), Appellees cite no case to support the premise. And for good reason: Supreme Court authority directly contradicts it.

Instead, Appellees claim the Government confuses the various legal usages of the term "jurisdiction" (Appellees Brf. 12-15), but the confusion is all theirs. Although it does not use the specific terms, the Government's brief correctly distinguishes between "adjudicative jurisdiction" to hear this case, which the district court has under 18 U.S.C. § 3231, and "legislative jurisdiction" to enact the charged statutes, which Congress has under the Commerce Clause. (*See* Government Brf. 24-25; 29-41.) Appellees, however, confuse these matters by equating Congress's legislative powers under the Constitution to enact a particular statute with the scope or reach of that statute. (*See, e.g.*, Appellees Brf. 18-19.)

Again, those two concepts are distinct. Just as Congress can enact a statute with a prescriptive reach beyond its powers to legislate, *see, e.g.*, *United States v. Lopez*, 514 U.S. 549 (1995), Congress may also limit the reach of a statute to less conduct than could be reached by its full power to regulate. While Appellees' argument depends upon their claim that Congress's legislative jurisdiction defines the scope of a statute (Appellees Brf. 18-19), the scope of a statute is defined by its text. Congress's power to enact a statute may be relevant to a statute's constitutionality, but that is not

-7-

at issue here. (*See* Appellees Brf. 18 ("[T]he point is not that the statute is unconstitutional because its terms could possibly reach conduct having no connection to an enumerated power.") The only issue here is the reach of each statute.

Where Congress intends a criminal statute to apply only in certain geographic locations, Congress unquestionably knows how to do so. *See, e.g.*, 18 U.S.C. § 32 ("air navigation facility"); § 33 ("garage . . . used in the operation of . . . vehicles engaged in interstate commerce"); § 37 ("airport serving international civil aviation"); § 247(a) ("religious real property"); § 248(a)(3) ("facility provides reproductive health services," "place of religious worship"); § 547 ("building upon the boundary line between the United States and any foreign country"); § 548 ("bonded warehouse"); § 607 ("room or building occupied in the discharge of official duties by an office or employee of the United States"); § 758 ("check point operated by the Immigration and Naturalization Service"); § 844(f)(1) ("real property in the whole or in part owned or operated by, or leased by, the United States"); §§ 1111, 1112, 1113 ("special maritime and territorial jurisdiction of the United States"); § 1118 ("Federal correctional institution"); § 1119 ("outside the United States but within the jurisdiction of another country"); § 1153 ("Indian country").

Appellate Case: 20-3671     Page: 15     Date Filed: 06/29/2021 Entry ID: 5050315

In fact, the undersigned are not aware of, and Appellees do not cite, a criminal statute that courts have interpreted to apply in only certain places even though its text does not contain such a restriction. This Court should decline Appellees' invitation do so here.

To be clear, the Government does not argue that "no legislative jurisdiction cabins" the reach of § 1115. (Appellees Brf. 17.) Rather, both statutes reach all conduct covered by their elements, which in turn limit § 1115 to quintessentially economic activity (Government Brf. 36-40) and § 2302(b) to historically navigable waters that can be regulated under the Commerce Clause (Government Brf. 40-41). The Appellees' error is in failing to recognize that when Congress intends to limit the reach of a statute to the admiralty jurisdiction of the federal courts, it includes the relevant limit in the statute. *See, e.g.*, *United States v. Flores*, 289 U.S. 137, 146 (1933) (holding that Congress had the authority to criminalize murder where the statute required that the crime was "committed within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State on board any vessel belonging in whole or in part to the United States' or any of its nationals").

Appellate Case: 20-3671     Page: 16     Date Filed: 06/29/2021 Entry ID: 5050315

2. _The statutory history reinforces the text and shows that both statutes are of general application and reach all conduct defined by their terms._

Appellees' contention that interpreting the charged statutes to reach the full extent of their statutory elements is doctrinally "anachronistic" is not only irrelevant, but also mistaken. (Appellees Brf. 38.) As shown in the Government's brief, the statutory history, the historically contemporaneous cases, and the statutes' current language all support this Court interpreting both statutes to reach all conduct covered by the elements of each crime. (Government Brf. 29-44.)

Appellees attempt to undermine the import of cases historically contemporaneous with the enactment of the various predecessors to § 1115 that state the statute was passed under the Commerce Clause by pointing out the cases are not binding authority. (Appellees Brf. 41.) Tellingly, Appellees cite no binding authority to the contrary. Rather, those contemporaneous cases provide the best evidence of Congress's and the courts' thoughts at the time, and those cases agree Congress passed the original predecessor of § 1115 under its commerce power to address the dangers posed by steamboat accidents and explosions. _See, e.g._, Act of July 7, 1838, ch. 191, 5 Stat. 304 ("An act to provide for the better security of the lives of passengers on board

-10-

of vessels propelled in whole or in part by steam."); *United States v. Warner*, 28 F. Cas. 404, 408 (C.C.D. Ohio 1848).

Any doctrinal anachronisms in this case belong to Appellees, who argue that Congress enacted each statute "under its general admiralty power." (Appellees Brf. 18.) That power is not enumerated in the Constitution, and the Supreme Court did not recognize an implied admiralty power for Congress until Justice Bradley did so in the late nineteenth century. *See Butler v. Boston & S.S.S. Co.*, 130 U.S. 527 (1889); *Ex Parte Garrett*, 141 U.S. 1 (1891). Moreover, both before and after the implied admiralty power cases, numerous Supreme Court decisions found Congress's power to enact maritime legislation in the Commerce Clause. *See, e.g.*, *The Daniel Ball*, 77 U.S. 557, 564 (1870); *Moore v. American Transp. Co.*, 65 U.S. (24 How.) 1, 39 (1860); *Providence & N.Y. S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578 (1883); *The Robert W. Parsons*, 191 U.S. 17 (1903); *see also Kaiser Aetna v. United States*, 444 U.S. 164, 170-74 (1979) (discussing Congress's powers to regulate the nation's waters).

Appellees' attempts to divine a recognized admiralty power earlier than the 1880's not only fail, but also support the observation that Seaman's Manslaughter was not intended to be an admiralty crime. Appellees cite *The Genesee Chief*, 53 U.S. 443 (1851), for the proposition that "legislation

-11-

extending federal courts' jurisdiction was supported by the admiralty power rather than the Commerce Clause." (Appellees Brf. 24.) That case, however, holds that Congress was able to extend the jurisdiction of federal courts beyond "tidewaters," because the additional waters fell within the meaning of admiralty in Article III of the Constitution. The case was about the federal courts' adjudicative jurisdiction, not Congress's legislative jurisdiction.

Rather, prior to *The Genesee Chief* in 1851, the Supreme Court limited the admiralty jurisdiction of federal courts to the "high seas" and the country's "tide-waters." 53 U.S. at 452. A statute designed to address the damage caused by steamboats on the country's rivers and lakes would have little effect if Congress wanted it to apply only to tide-waters and the high seas. Limiting Seaman's Manslaughter to the reach of admiralty jurisdiction in 1838 would have frustrated Congress's efforts to address steamboat calamities wherever they happened. (*See* Government Brf. 31-32.)

Appellees argue that simply because the particular section, § 12, that enacted the original predecessor of Seaman's Manslaughter did not refer to admiralty did not mean that limitation was not implied because § 13 of that enacting legislation, which also did not have an express geographical limitation, was applied by courts in admiralty tort actions. (Appellees Brf. 24.) Section 13, however, created an evidentiary presumption that applied "in

-12-

*all* suits and actions against proprietors of steamboats," Act of July 7, 1838, Ch. 191, § 13, 5 Stat. 304, 306 (emphasis added), so it should be no surprise that when an action against the proprietor of a steamboat was brought in admiralty, the presumption applied. Neither the plain language of that section, nor the cases cited applying it, support the claim that the section applied *only in* admiralty actions, which is the holding Appellees would have needed for their argument to bear any weight.

Ultimately, Appellees' statutory argument that § 1115 is restricted to the courts' admiralty jurisdiction rests on a single case: *United States v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir. 1979). (Appellees Brf. 31-32.) Not only is the assertion from *Allied Towing* Appellees rely upon dicta (Government Brf. 27-28), but it is also wrong (Government Brf. 32). The *Allied Towing* court read § 1115's predecessor statutes incorrectly. The subsequent codification of the 1871 legislation that *Allied Towing* references shows that Congress did not intend each of its sections to be read together. Rather, when Congress enacted the Revised Statutes of the United States only three years later, Seaman's Manslaughter was placed in Title LXX ("Crimes"), and § 41, the unrelated and facially inconsistent provision regarding admiralty, was placed in Title LII ("Regulation of Steam-Vessels"). (*See also* Government Brf. 32.) While Seaman's Manslaughter continued on

-13-

to Title 18 of the United States Code (Crimes and Criminal Procedure), Title LII was deleted entirely. Furthermore, to the extent *Allied Towing* imported a doctrine delineating the adjudicative jurisdiction of federal courts, "general admiralty jurisdiction," to delineate the prescriptive reach of a statute enacted by Congress, its holding is unsupported by law or logic and reflects a fundamental misunderstanding of the distinction between those two concepts. Given its patent errors of statutory history and inherent illogic, *Allied Towing* provides no support for the Appellees' claims.

Appellees also attempt to use general descriptions of Commerce Clause jurisprudence in *Gonzalez v. Raich*, to support an argument that contradicts the specific case law and statutory history of § 1115. (Appellees Brf. 37-38.) Not only is it wrong as a matter of history, but the argument also has little relevance because the current § 1115 was enacted in 1948, which was six years after *Wickard v. Filburn*, 317 U.S. 111 (1942), the case that both provided the Commerce Clause rationale for, and was explicitly endorsed in, *Gonzalez*, 545 U.S. at 17-22. That is, Congress passed the current version of Seaman's Manslaughter as "a statute of general applicability" firmly within what *Gonzalez* describes as the "new era" of regulation under the Commerce Clause. *Id.* at 16. While this Court is free to look at any available

-14-

Congressional power to evaluate the constitutionality of a statute here, in this case the text and history of both statutes point to the Commerce Clause.

Statutes are read according to their "'ordinary meaning at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, 585 U.S. —, 138 S.Ct. 2067, 2070 (2018) (ellipsis omitted). There is no anachronism in interpreting a statute passed after the Supreme Court sanctioned the sweeping New Deal economic regulation in *Wickard*, and for the purpose of clarifying that statute's "general application," to be generally applicable. *See* H.R. Rep. No. 80-304, at A91 (1947).

Lastly, Appellees' attempt to analogize § 1115 to an admiralty statute only succeeds in further demonstrating that there is no textual ground to limit § 1115 to admiralty. Although Appellees point this Court to the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et. seq.*, as an example of an admiralty statute that "has no express 'navigability limitation.'" (Appellees Brf. 30), they fail to point out that COGSA is codified in Title 46 (Shipping), Subtitle III (Maritime Liability), as Chapter 307 (Liability of Water Carriers). That Chapter follows Chapter 301 (General Liability Provisions), which begins "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or

-15-

consummated on land." 46 U.S.C. § 30101. The statute also addresses the "seaworthiness" of vessels that travel among "ports" as well as the loss of "property at sea." 46 U.S.C. §§ 30702, 30705, 30706. Its criminal sanction is limited to fines. 46 U.S.C. § 30707.

The legislative clues that COGSA does not "mirror" § 1115 only increase from there, and any close comparison of the respective statutory contexts buttresses § 1115's general application rather than undermines it.

3. *Both statutes are limited by their express terms to conduct Congress can regulate through its commerce power.*

As shown in the Government's brief, both statutes are limited by their statutory elements to conduct that Congress can regulate through its commerce power. (Government Brf. 30, 36-41.) Because the indictment adequately alleges each charge, Appellees could not challenge any count for falling outside a Congressional power to legislate until after the Government's case-in-chief at trial. (Government Brf. 39 (citing *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016)); *see also United States v. Turner*, 842 F.3d 602, 604-06 (8th Cir. 2016).

But even if Appellees could bring a constitutional challenge to the indictment pretrial, which they cannot, and even if they had done so, which they did not, any such challenge would fail because the indictment unquestionably alleges that the charged crimes occurred while Appellees were

-16-

engaged in commercial activities (*see* Government Brf. 6-10), and Appellees do not contest in their brief that Table Rock Lake is a historically navigable waterway. This Court recognized both these two bases for regulation under the Commerce Clause in *Land & Lake Tours, Inc. v. Lewis*, 738 F.2d 961 (8th Cir. 1984). (*See* Government Brf. 36-44.) In fact, under *Land & Lake Tours*, were this Court to imply any sort of navigability requirement, it would be requirement of historical navigability under the commerce clause instead of the admiralty requirement Appellees argue for. *Id*. at 962-64; *see also Kaiser Aetna*, 444 U.S. at 171-74. Rather than address *Land & Lake Tours*, which provides the controlling authority in this case, Appellees fail to even cite it.

Instead of arguing that either statute charged in this case is overbroad in reaching conduct outside of Congress's legislative jurisdiction, Appellees argue that the breadth of § 1115's possible applications show that Congress must have imposed an implied limitation to the courts' admiralty jurisdiction onto § 1115. (Appellees Brf. 17.) Appellees' base their argument that the statutory elements of § 1115 are overly board on the term "owner." (*See* Appellees Brf. 17-18; 43-45.) As an initial matter, no "owner" is charged in this case, making that statutory term irrelevant to determining whether the present charges suffer from a constitutional infirmity.

Appellate Case: 20-3671   Page: 24   Date Filed: 06/29/2021 Entry ID: 5050315

Nevertheless, § 1115, when read as a whole, is clearly limited to vessels engaged in commercial activity, and the term "owner" should be understood in that context. Though were this Court to have doubts, every applicable canon of construction confirms that the statute does not reach the owner of every imaginable boat on every imaginable moat. Included in exclusive lists among "captain, engineer, pilot, or other person employed" and "charterer, inspector, or other public officer," the principle that statutes should be interpreted as a whole demonstrates that that statute applies to "owners" of vessels involved in commerce. *See United States v. Kaluza*, 780 F.3d 647, 663 (5th Cir. 2015) (explaining that terms in § 1115 should be interpreted in connection with the statute as a whole). The statute covers commercial activity, and the single term "owners," does not suggest otherwise. *See United States v. LaBrecque*, 419 F.Supp. 430, 434 (D.N.J. 1976) (applying the canons of *ejusdem generis* and *noscitur a sociis* to limit § 1115 to commercial vessels); *see also United States v. Richard Smith*, No. 18-CR-0026, DCD 92, 94, 97 (D.V.I. Jan. 8, 9, 16, 2019) (granting judgment of acquittal in § 1115 prosecution because prosecution did not prove the death occurred on a commercial voyage).

More importantly, the canon of constitutional avoidance forecloses Appellees' strained reading of § 1115. A court is "obligated to construe [a]

-18-

statute to avoid [constitutional] problems" if it is "'fairly possible'" to do so. *INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (quotations and citations omitted); *see also Jennings v. Rodriguez*, 583 U.S. —, 138 S.Ct. 830, 836 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."); *Skilling v. United States*, 561 U.S. 358, 406 (2010) ("The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.") (quotation omitted). Simply reading the term "owner" in context negates Appellees' fantastical hypotheticals, which do not involve vessels involved in commercial activities and, therefore, are not covered by the elements of § 1115.

Lastly, both the district court's and Appellees' vague appeals to federalism are ill-placed in this case. (Government's Adden. A21; Appellees Brf. 44-45.) Recognizing that the plain terms of both § 1115 and § 2302(b) authorize the federal prosecution of employees of an interstate business that negligently caused the death of 17 paying passengers on a federally regulated vessel piloted by a federally licensed mariner on a federally constructed and regulated interstate lake that sits over federally owned land, hardly changes "the balance of federal and state criminal jurisdiction over these areas" or

Appellate Case: 20-3671     Page: 26     Date Filed: 06/29/2021 Entry ID: 5050315

undermines "a traditional sphere of state sovereignty—the State's criminal jurisdiction over the Lake." (Appellees Brf. 44.)

Appellees do not contest that the Commerce Clause allows the Government to regulate almost every aspect of their business, *see, e.g.*, 46 U.S.C. § 3201, *et. seq.*; 46 C.F.R. Chapter I, Parts 176 and 185, as well as issue citations for criminal infractions on the Lake, *see, e.g.*, 18 U.S.C. § 3401; 16 U.S.C. § 460d; 36 C.F.R. § 327.25. There are no concerns that allowing prosecution for deaths directly caused by Appellees in the scope of their commercial employment "would greatly expand federal criminal jurisdiction over intrastate activity Congress did not intend to regulate." (Appellees Brf. 44.) Rather, Congress already allows regulation of Appellees' operations on the Lake, including criminal prosecution.

Apparently unaware of the irony, Appellees argue that reading each statute to reach conduct covered by its elements would not be a strict construction of those statutes, while reading in extra-statutory geographic requirements would. (*See* Appellees Brf. 44.) In doing so, Appellees ignore that their reading of § 1115 transgresses the Supreme Court's directions that where a statute does not contain a "limiting term that restricts its reach," "courts 'are not at liberty to create an exception where Congress has declined to do so.'" *Freytag v. Comm'r*, 501 U.S. 868, 873-74 (1991) (quoting

Appellate Case: 20-3671    Page: 27    Date Filed: 06/29/2021 Entry ID: 5050315

*Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989)).  Congress did not limit either statute charged in this case to the admiralty jurisdiction of the courts, and this Court should not do so.

> 4. *Reversing the motion to dismiss because the indictment adequately charges each crime would not constitute a constructive amendment of the charges.*

Appellees argue, albeit summarily, that proceeding to trial without a court finding that Table Rock Lake was within its admiralty jurisdiction would constitute a constructive amendment of the indictment.  (Appellees Brf. 34-36.)  Appellees, however, explain neither how an indictment that currently alleges the elements for each charge could constitute a constructive amendment nor how a constructive amendment could occur before trial.  *See, e.g.*, *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007) ("A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment.").

Rather, Appellees argue that the Government's interpretation of the charged statutes would change what the Government had to prove at trial, but at no point in their brief do Appellees address the elements of either § 1115

Appellate Case: 20-3671     Page: 28     Date Filed: 06/29/2021 Entry ID: 5050315

or § 2302(b).  While Appellees originally contended before the district court that the admiralty jurisdiction of the courts was an essential element of the charged crimes (*see* DCD 54 at 6-7), they did not object to the district court's rejection of that claim (Government's Adden. A6-A8), did not cross-appeal on the issue, and do not argue for it in their brief.  Nonetheless, and out of an abundance of caution given the uncertainties regarding the issues of first impression in this case, the second superseding indictment alleges both that Table Rock Lake was "navigable" and that it was "within admiralty jurisdiction of the United States."  (DCD 42 ¶¶ 47, 48, 51, 53, 56, 58, 60; *see also* Government Brf. 5.)

If admiralty jurisdiction is not an element of the crime, which Appellees appear to concede, then the indictment's inclusion of that allegation can be ignored as surplusage.  *See Terry v. United States*, 593 U.S. —, 2021 WL 2405145, at *5 n.4 (June 14, 2021) ("The usual practice is to ignore extraneous language in an indictment." (citing *Ford v. United States*, 273 U. S. 593, 602 (1927)); *United States v. McIntosh*, 23 F.3d 1454, 1457-58 (8th Cir. 1994) (holding that inclusion of the wrong brand of firearm was ignorable surplusage rather than a constructive amendment because the brand was not an element of the offense).  So long as the jury finds each of the elements for each count, any surplusage in the charging document is irrelevant.

Appellate Case: 20-3671     Page: 29     Date Filed: 06/29/2021 Entry ID: 5050315

In fact, even after a petite jury finds some fact that is not an element of an offense, appellate courts ignore the surplusage. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016); *United States v. Inman*, 558 F.3d 742, 748-49 (8th Cir. 2009) (holding evidence sufficient even though "government failed to prove the jurisdictional element charged to the jury," because this Court reviews "the sufficiency of the evidence according to the element as defined by statute and charged in the indictment").

Here, if admiralty jurisdiction is something the jury must find, it is alleged. If not, that allegation can be ignored. The prohibition on constructive amendments plays no role.

**B.**     ***Table Rock Lake is Currently Susceptible to Interstate Shipping and, Therefore, Within the Admiralty Jurisdiction of the Federal Courts.***

   *1.     Because admiralty jurisdiction requires present navigability, the Edwards v. Hurtel cases must be limited to their facts, which were not in the record here.*

As Appellees correctly observe, determining whether a body of water is presently navigable in fact involves "questions of law inseparable from *the particular facts* to which they are applied" (Appellees Brf. 48 (quoting *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 404 (1940) (emphasis added)). With that observation, Appellees also reveal why the two cases they rely upon—*Edwards v. Hurtel*, 717 F.2d 1204 (8th Cir. 1983)

Appellate Case: 20-3671     Page: 30     Date Filed: 06/29/2021 Entry ID: 5050315

(*Edwards I*), and *Edwards v. Hurtel*, 724 F.2d 689 (8th Cir. 1984) (*Edwards II*)—are irrelevant to this Court's consideration of this appeal.

Edwards I considered the navigability of Table Rock Lake under uncontested, judicially noticed facts, 717 F.2d at 1205, while *Edwards II* considered whether the plaintiffs had preserved their opposition to those judicially noticed facts for appeal, *Edwards II*, 724 F.2d at 689. Appellees' culling from dicta aside (Appellees Brf. 47-48), neither case evaluated the present navigability of Table Rock Lake regardless of those judicially noticed facts. However, none of the factual record before the district court in *Edwards*—neither the full set of judicially noticed facts nor the referenced affidavits—were part of the record in this case. Without having the factual record from *Edwards* before it, the district court erred in relying upon any factual finding referred to in this Court's decisions and in doing so failed to decide navigability based on "the particular facts" before it. *Appalachian Elec. Power Co.*, 311 U.S. at 404.

As Appellees recognize, "navigability determinations therefore might not be binding on cases involving different facts" (Appellees Brf. 48), and there is no dispute that this case involved a different factual record than the *Edwards* cases.

2. <u>*No binding authority holds that admiralty jurisdiction requires current, non-recreational shipping across a body of water.*</u>

Both the Supreme Court and this Court focus on physical characteristics of a body of water to determine whether it is navigable in fact; that is, whether the waters "are *susceptible* of being used . . . as highways for commerce," *The Daniel Ball*, 77 U.S at 563 (emphasis added); or what is the "present *capability*" of the waterway "to sustain commercial shipping," *Livingston*, 627 F.2d at 170 (emphasis added). Appellees, in contrast, seek to radically narrow that test, both (1) by construing "capability" and "susceptibility"— terms focused on how a waterway could possibly be used—to require that a "a water must be *currently used or likely to be used* for commercial shipping in the future" (Appellees Brf. 51 (emphasis added)), and (2) by construing "commercial shipping" to exclude recreational, but still commercial, activities. Both limitations are improper under *The Daniel Ball* and *Livingston*.

First, Appellees' attempt to limit admiralty jurisdiction to only waters that are "currently used or likely to be used for commercial shipping" (Appellees Brf. 51) contradicts binding authority. *See The Daniel Ball*, 77 U.S at 563 ("susceptible"); *Livingston*, 627 F.2d at 170 ("capability"); *see also The Montello*, 87 U.S. 430, 441 (1874) ("The capability of use by the public for purposes of transportation and commerce affords the true criterion of the

-25-

navigability of a river, rather than the extent and manner of that use."); *Lockheed Martin Corp., ACE USA v. Morganti*, 412 F.3d 407, 413 (2d Cir. 2005) (holding that "navigability is limited to waters presently used or presently capable of being used for commercial activity") (citation omitted).

The Second Circuit explained the proper rule in *Lockheed Martin*, where it held that "the appropriate test for navigability depends on physical rather than economic characteristics of the waterway in question." 412 F.3d at 409. That court explained that:

> [W]here the waterway is not physically obstructed but only economically inactive, the federal interest [of uniformity of law] remains. Because Cayuga Lake is physically capable of supporting shipping, it is possible at any time for an interstate commercial vessel to enter the lake.

*Id.* at 413. That court continued: "The Supreme Court, in applying *The Daniel Ball* test, interpreted the term 'natural or ordinary conditions' by focusing on physical conditions: the volume of water as well as the gradients and regularity of flow." *Id.* (quoting *Appalachian Elec. Power Co.*, 311 U.S. at 407).

The physical characteristics of the respective bodies of water controlled this Court's holdings in both *Livingston* and *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, as each were dammed waters incapable of interstate crossing. *Livingston*, 627 F.2d at 166 (Norfork River, Arkansas);

-26-

*Three Buoys*, 921 F.2d 775, 779 (8th Cir. 1990) (Lake of the Ozarks, Missouri). The evidence in this case, however, shows that Table Rock Lake is physically capable of supporting interstate shipping of goods and people in the manner contemplated by *Livingston* and *The Daniel Ball*. In fact, such shipping currently and regularly occurs on the Lake. (*See* Government Brf. 15-18.)

Second, Appellees further assert that "commercial shipping" cannot include recreational commerce (Appellees Brf. 52-53.), but not one of the three out-of-circuit cases Appellees cite supports their claim. The Second Circuit's decision in *Lockheed Martin* holds exactly the opposite when finding Cayuga Lake in New York to be navigable in fact even though only tour boats operated on the lake at the time. 412 F.3d at 410 (holding lake can support commercial shipping even though "no commercial shipping actually takes place on Cayuga Lake *other than* commercial tour boats" and "[t]here is no record evidence as to whether these boats traveled interstate" (emphasis added)). Rather than aid Appellees, *Lockheed Martin* strongly supports finding that Table Rock Lake is navigable in fact.

The Seventh Circuit's decision in *Chapman v. United States*, 575 F.2d 147 (7th Cir. 1978), and the Ninth Circuit's decision in *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975), likewise do not support Appellees'

-27-

claims that recreational activities, no matter the size or extent, cannot be commercial. In both *Chapman* and *Adams*, the courts held bodies of water that are now only traversed intrastate by "small pleasure boats" or "small pleasure craft" were no longer within the courts' admiralty jurisdiction because "commercial activity" no longer took place there. *Chapman*, 575 F.2d at 147, 149; *Adams*, 528 F.2d at 440; *see also In re Strahle*, 250 F.Supp.2d 997, 1002 (N.D. Ind. 2003) (describing *Chapman* as involving "a body of water that use[d] to be susceptible to interstate commerce and was no longer."). Both cases were decided based on the lack of any commerce on the waters in question, not on the fact that the commerce was merely recreational. *See Chapman*, 575 F.2d at 149 (using the general phrase "commercial craft" to satisfy the commercial shipping standard); *see also Livingston*, 627 F.2d at 170 (noting the holdings in *Chapman* and *Adams* depended on the absence of "some present or potential commercial activity").

Appellees do not cite a single case supporting their claim that commercial activity cannot be recreational, no matter the size or extent. (Appellees Brf. 52.) Instead Appellees attempt to smuggle in terms like "freighter" (Appellees Brf. 55), although no case ties admiralty jurisdiction to shipping in that sense, and no case would because *The Daniel Ball*

-28-

contemplated highways of commerce that moved people just as much as goods. 77 U.S. at 563 (holding commerce involves "trade and travel").

This Court implicitly recognized recreational transport can be commercial shipping through its citations to *Finneseth v. Carter*, 712 F.2d 1041 (6th Cir. 1983). *See Edwards I*, 717 F.2d at 1205; *Three Buoys*, 921 F.2d at 778 n.4. This Court can now clarify that *Livingston* and *Finneseth* apply the same standard derived from *The Daniel Ball*. Such consistency will not lead to an expansion of the applicable law as Appellees claim (Appellees Brf. 53); rather, it will confirm that this Court's test aligns with the holdings of other circuits. *See, e.g.*, *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055 (11th Cir. 2013); *Lockheed Martin*, 412 F.3d at 413; *Mullenix v. United States*, 984 F.2d 101, 104 (4th Cir. 1993). In light of the record in this case, Table Rock Lake would be navigable in fact under *Finneseth*, so it should be under *Livingston* as well.

Appellate Case: 20-3671     Page: 36     Date Filed: 06/29/2021 Entry ID: 5050315

## CONCLUSION

For the reasons stated in the Government's opening brief, as well as above, this Court should reverse, vacate the district court's order dismissing the second superseding indictment in this case, and remand for further proceedings.

Respectfully submitted,

TERESA A. MOORE
  Acting United States Attorney

By    /s/ *Brian P. Casey*

BRIAN P. CASEY
CASEY CLARK
  Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri  64106
Telephone:  (816) 426-3122

*Attorneys for Appellant*

-30-

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g), that this brief complies with the type-volume limitations in Fed. R. App. P. 32(a)(7)(B) and contains 6,496 words. The brief was prepared using Microsoft Word for Office 365 software. In making this certification I have relied upon the word-count feature of Microsoft Word for Office 365. Furthermore, the brief has been determined to be virus-free in compliance with Eighth Circuit Rule 28A(h).


 /s/ *Brian P. Casey*
Brian P. Casey
Assistant United States Attorney

Appellate Case: 20-3671     Page: 38     Date Filed: 06/29/2021 Entry ID: 5050315

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. A paper copy will be served on participants in the case by U.S. Mail, postage prepaid, within five days of the Court's notice that the brief and addendum have been reviewed and filed.

I hereby certify that a copy of the Government's brief and addendum were mailed on July ___, 2021, to:

> James R. Hobbs
> Wyrsch, Hobbs & Mirakian, PC
> One Kansas City Place
> 1200 Main Street, Suite 2110
> Kansas City, Missouri 64105
>
> *Attorney for Appellee McKee*
>
> John Justin Johnston
> Johnston Law Firm LLC
> 811 Grand Boulevard, #101
> Kansas City, Missouri 64106
>
> *Attorney for Appellee Baltzell*
>
> Thomas J Bath, Jr.
> Bath & Edmonds, P.A.
> 10601 Mission Road, Suite 200
> Leawood, Kansas 66206
>
> *Attorney for Appellee Lanham*

 /s/ *Brian P. Casey*
Brian P. Casey
Assistant United States Attorney

-32-